UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BRANDY MARIE SANDOVAL,

              Plaintiff,

    v.

OFFICER MELVIN OF WINSTON
POLICE DEPARTMENT,

              Defendant.

Case No. 6:19-cv-00712-YY

OPINION AND ORDER

YOU, Magistrate Judge:

*Pro se* plaintiff Brandy Marie Sandoval has brought a civil rights action pursuant to 42

U.S.C. § 1983 against defendant Officer Seth Melvin of the Winston Police Department.

Plaintiff alleges that defendant violated both her Fourteenth Amendment right to be free from the

use of excessive force and Eighth Amendment right to be free from cruel and unusual

punishment.  Compl. 4-6, ECF #2.

Defendant seeks summary judgment (ECF #29) on all of plaintiff's claims.  For the

reasons discussed below, defendant's motion for summary judgment is GRANTED.[1]

_____

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this
case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).  Further,
because the court finds this matter suitable for decision without oral argument pursuant to L.R.
7-1(d)(1), plaintiff's motion for a telephone or video hearing (ECF #33) is DENIED.

## STANDARDS

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 342 (citing FED.R.CIV.P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment.  *Id*.  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.* at 248-49.  A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial."  *Balint v. Cason City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).  "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party."  *Addisu*, 198 F.3d at 1134.

*Pro se* pleadings are "to be liberally construed."  *Estelle v. Gamble*, 429 U.S. 97, 106

(1976). "This rule protects the rights of pro se litigants to self-representation and meaningful access to the courts, . . . and is particularly important in civil rights cases." *Pouncil v. Tilton*, 704 F.3d 568, 574-75 (9th Cir. 2012) (citations and quotation marks omitted).

## BACKGROUND FACTS

### I.    Videotaped Evidence

Both parties offer the video recording captured by defendant's body camera as evidence to support their positions. ECF #30-1; ECF #37. The recording includes audio and captures the entire transaction between plaintiff and defendant.

While disputed facts are viewed in the light most favorable to the nonmoving party at the summary judgment stage, the court need not adopt a party's version of the facts that is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding when one party's story contradicts the record "so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). Therefore, the court relies on the recording where its supplementation rectifies any factual disputes.

### II.    Synopsis of Events

On April 6, 2018,[2] defendant was dispatched to plaintiff's residence to investigate a reported theft of beers that occurred at the J&M Market in Winston, Oregon. Melvin Decl. ¶ 3, ECF #30. Defendant knocked on the front and side doors of the residence, walked the perimeter of the house, and was met by plaintiff in the carport after she eventually came outside. DVD 0:05-1:31, ECF #37. After defendant confronted plaintiff and asked if she had stolen the beer, plaintiff admitted to the theft, turned around, and walked toward the door to her house. *Id*. at

---

[2] The Complaint alleged the incident occurred on April 1, 2018, but this appears to be an error. Compl. 4, ECF #2.

1:31-51.  As plaintiff proceeded up the two stairs leading into her house and started opening the

door, defendant twice ordered plaintiff to "stop" and told her she could not go back into her

home, to which she responded, "I can, I will."  *Id*. at 1:51-55.

Defendant grabbed plaintiff's jacket sleeve to prevent her from entering her house, but

plaintiff pulled away from him and kept trying to walk through the door.  *Id.* at 1:55-56.

"[C]oncerned that th[e] situation would escalate and become more dangerous . . . if [he] allowed

her to retreat into the home," defendant pulled plaintiff out of the doorway and, according to

plaintiff, "took me to the ground hard and fast" with his "knee in my back."  *Id.* at 1:56-58;

Melvin Decl. ¶ 7, ECF #30; Hisel Decl., Ex. 1 ("Sandoval Dep."), 164:14-15, ECF #31-1.

Plaintiff claims defendant's knee was "still on my back as he's cuffing me."  Sandoval Dep..

164:20-21.  Plaintiff admits that she was "resisting a little bit, because [she] didn't want to go to

jail."  *Id.* at 163:19-20.

After the takedown, defendant radioed for backup and was eventually able to secure

plaintiff in handcuffs.  Melvin Decl. ¶ 8, ECF #30.  Defendant decided that it "was safest to wait

for [his] backup to arrive before trying [to] stand [plaintiff] up and secure her in [his] police car."

*Id.* at ¶ 9.  Plaintiff never verbalized that her back was injured, and she even asked her boyfriend

for a "drag" from his cigarette.  DVD 1:50-5:48, ECF #37.

When the backup officer arrived, defendant stood plaintiff up.  *Id.* at 5:38-47.  As he

attempted to walk her to his police car, plaintiff demanded that defendant let her "go into the

house real quick and grab [her] purse and [her] I.D. and all that."  *Id.* at 5:48-50.  When

defendant told her that she was not going to be let back into her house, plaintiff became irate and

yelled, "I said I am!"  *Id.* at 5:50-55.  While she was yelling, plaintiff attempted to pull away

from defendant and then kicked backward, striking defendant in the thigh.  *Id.* at 5:56-57; Melvin

Decl. ¶ 9, ECF #30.  At her deposition, plaintiff testified, "I kicked back or whatever because my back is killing me.  And I'm just trying to . . . be resistant, I guess. . . I guess you could say I was resisting."  Sandoval Dep. 165:5-8, ECF #31-1.

Defendant again took plaintiff to the ground "to regain control of her."  Melvin Decl. ¶ 9, ECF #30.  At no point in time did plaintiff verbalize that her back was injured, but shortly after the second takedown she did complain that defendant "just fucking cracked my fucking knee." DVD 6:17-21, ECF #37.  Defendant and the backup officer then stood plaintiff back up.  *Id.* at 6:36-40.  As the officers escorted plaintiff to defendant's car, she asked defendant to "gimme my beer," and she again asked her boyfriend for a "drag" of his cigarette.  *Id.* at 6:41-7:10.  After plaintiff was secured in the back of the police cruiser, she was "transported to the Douglas County jail without further incident."  Melvin Decl. ¶ 10, ECF #30.

On May 14, 2018, plaintiff pleaded no contest to attempted assault of a public safety officer in exchange for a reduced sentence and dismissal of two other counts.  Hisel Decl., Ex. 2, at 19-21, ECF #31-1.  At the sentencing hearing, the prosecutor explained that plaintiff "leaned back and kicked [defendant] in the thigh which is the basis for the attempted assault of a public safety officer."  *Id.*, Ex. 3, at 3.

## DISCUSSION

Plaintiff seemingly alleges that only defendant's first takedown maneuver violated her right to be free from excessive force.  Compl. 4, ECF #2.  For example, she asserts that defendant's use of force was excessive when he "pulled [her] from the step [she] was standing on [and] threw [her] down."  *Id.* at 6.  The body camera video demonstrates that the only time defendant pulled plaintiff from the step to her doorway was during the first takedown.  DVD 1:51-57, ECF #37.  Further, plaintiff alleges that defendant "pounced" on her after the takedown.

Compl. 4, ECF #2.  Again, the video demonstrates that the only time defendant was on top of

plaintiff was after the first takedown as he was attempting to place her in handcuffs.  DVD 1:57-

5:40, ECF #37.  Nonetheless, plaintiff also alleges that defendant used excessive force in taking

her to the ground after she asked to go inside her house to grab her purse.  Compl. 4, ECF #2.

The video reveals that the only time plaintiff asked to go inside and grab her purse was just prior

to defendant's second takedown maneuver.  DVD 5:47-58, ECF #37.  Thus, it appears that

plaintiff has conflated the events surrounding the first and second takedown.  However, because

*pro se* pleadings must be liberally construed, the court addresses both takedowns in its analysis.

*Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) ("We construe pro se complaints liberally,

especially in civil rights cases.").

Defendant argues summary judgment in his favor is proper because:  (1) plaintiff's

excessive force claim is barred by the *Heck* doctrine; (2) plaintiff's Eighth Amendment claim is

not legally cognizable; (3) defendant's use of force was not excessive as a matter of law; and (4)

he is entitled to qualified immunity.

## I.     *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court held that a civil rights suit for money damages

that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not

cognizable under 42 U.S.C. § 1983.  512 U.S. 477, 486-87 (1994).  In other words, *Heck*

generally bars claims challenging the validity of an arrest, prosecution, or conviction.  *See*

*Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (holding that under *Heck*, if a criminal

conviction arising out of the same facts stands and is fundamentally inconsistent with the

unlawful behavior for which § 1983 damages are sought, the § 1983 action must be dismissed).

A § 1983 claim is therefore barred by *Heck* if the "plaintiff could prevail only by negating 'an

element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148,

1153-54 (9th Cir. 2002) (citing *Heck*, 512 U.S. at 487 n.6).

However, "an allegation of excessive force by a police officer would not be barred by

*Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction."

*Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) (citing *Smith v. City of*

*Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc)).  In *Smith*, the Ninth Circuit held that the

plaintiff, who pleaded guilty to resisting arrest, was not barred from pursuing an excessive force

claim pursuant to § 1983 "because the excessive force may have been employed against him

subsequent to the time he engaged in the conduct that constituted the basis for his conviction."

394 F.3d at 693.  The plaintiff's § 1983 action "neither demonstrated nor necessarily implied the

invalidity of his conviction."  *Id.*; *see also Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001)

("If [the officer] used excessive force subsequent to the time Sanford interfered with [the

officer's] duty, success in her section 1983 claim will not invalidate her conviction.  *Heck* is no

bar.").

Also, in this case, plaintiff was not convicted by a jury but pleaded no contest to the

charge.  As the Ninth Circuit has explained:

> [A] jury's verdict necessarily determines the lawfulness of the officer['s] actions
> throughout the whole course of the defendant's conduct, and any action alleging
> the use of excessive force would "*necessarily* imply the invalidity of [plaintiff's]
> conviction."  However, where a § 1983 plaintiff has pled guilty or entered a plea
> of nolo contendere . . . it is *not* necessarily the case that the factual basis for his
> conviction included the whole course of his conduct.

*Smith*, 394 F.3d at 699 n.5 (internal citation omitted and emphasis in original).

Thus, the question is whether it is reasonable to infer that plaintiff's conviction and her

excessive force claims are "based on different actions."  *Kyles v. Baker*, 72 F. Supp. 3d 1021,

1037 (N.D. Cal. 2014) (citing *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir.

2011) (holding that a conviction for resisting arrest under California Penal Code § 148(a)(1) does not "bar a § 1983 claim for excessive force under *Heck* if the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'").  Plaintiff's conviction for assault is based on her action of kicking defendant, while her excessive force claim is based on defendant's actions before and after the kicking.  Specifically, plaintiff claims that before she kicked defendant, he "took [her] to the ground hard and fast" and put a knee in her back, and after she kicked him, he took her to the ground again.  Neither of the actions that preceded or followed plaintiff's kicking derive from the same factual elements that established plaintiff's conviction.  *See Smithart*, 79 F.3d at 952-53 (holding that although the plaintiff had been convicted for assault with a deadly weapon for his attempt to run over officers with his vehicle, his excessive force claim against the officers for their subsequent use of force was not barred by *Heck*); *Sanford*, 258 F.3d at 1120 ("If [the officer] used excessive force subsequent to the time Sanford interfered with [the officer's] duty, success in her section 1983 claim will not invalidate her conviction.").  Because success in plaintiff's § 1983 suit for either the first or subsequent takedown does not compromise the validity of her conviction, plaintiff's excessive force claim is not barred by *Heck*.

Defendant argues that a judgment in plaintiff's favor in this case would necessarily imply the invalidity of her conviction because self-defense is a valid defense to the charge for which plaintiff was convicted and plaintiff did not assert self-defense in the underlying criminal case. Mot. Summ. J. 8, ECF #29 (citing *State v. Oliphant*, 347 Or. 175, 193 (2009) (en banc) ("[I]f a peace officer uses excessive force in making an arrest, the arrestee has a right to use physical force in self-defense against the excessive force being used by the officer.").

However, nothing in the record suggests that self-defense is an issue in this case. The video recording does not show that plaintiff acted in self-defense: there is a four-minute time lapse between the initial takedown and plaintiff's kick that was the basis for her conviction— over two minutes of which shows plaintiff secured in handcuffs and not resisting. DVD 1:55-5:44, ECF #37. Further, at plaintiff's deposition, when asked whether she had a right to kick defendant, plaintiff responded, "No. I didn't have a right to do that." Sandoval Dep. 165:13-14, ECF #31-1. Without any evidence that plaintiff committed the attempted assault in self-defense, the initial takedown maneuver and the subsequent attempted assault are most reasonably understood as two different actions within a continuous transaction; the first could impose civil liability on defendant and the second imposed criminal liability on plaintiff. *See Hooper*, 629 F.3d at 1132.

## II.    Eighth Amendment

In her complaint, plaintiff alleges that her rights were violated under the Eighth Amendment's prohibition against cruel and unusual punishment. Compl. 4, ECF #2. However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual punishments' applies only after 'conviction and sentence.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). Because plaintiff was not incarcerated at the time of the alleged excessive force, defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim as a matter of law.

## III.   Excessive Force

Plaintiff claims that her "14th Amendment" right to be free from excessive force was violated. Compl. 4, ECF #2. The Fourteenth Amendment, however, is not the proper vehicle for plaintiff's excessive force claim. Instead, "all claims that law enforcement officers have used

excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure'
of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'
standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395.
Accordingly, the court construes plaintiff's excessive force claims as brought pursuant to the
Fourth Amendment. *Litmon*, 768 F.3d at 1241.

### A.    Relevant Law

Under the Fourth Amendment, "the 'reasonableness' inquiry in an excessive force case is
an objective one:  the question is whether the officers' actions are 'objectively reasonable' in
light of the facts and circumstances confronting them, without regard to their underlying intent or
motivation." *Graham*, 490 U.S. at 397 (quoting *Scott v. United States,* 436 U.S. 128, 137-39
(1978)).  "Determining whether the force used to effect a particular seizure is 'reasonable' under
the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on
the individual's Fourth Amendment interests' against the countervailing governmental interests
at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  "Stated another way,
[the court] must 'balance the amount of force applied against the need for that force.'" *Bryan v.
MacPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057,
1061 (9th Cir. 2003)).

The court's analysis involves three steps.  *Glenn v. Washington Cty.*, 673 F.3d 864, 871
(9th Cir. 2011).  First, the court "must assess the severity of the intrusion on the individual's
Fourth Amendment rights by evaluating the type and amount of force inflicted." *Id.* (citations
and quotation marks omitted).  "[E]ven where some force is justified, the amount actually used
may be excessive." *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).  Second,
the court evaluates the government's interest in the use of force.  *Id.* (citing *Graham*, 490 U.S. at

396).  Finally, the court balances "the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.* (quoting *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003)).

"The strength of the government's interest in the force used is evaluated by examining three primary factors: (1) whether the suspect poses an immediate threat to the safety of the officers or others, (2) the severity of the crime at issue, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Glenn*, 673 F.3d 872 (quoting *Graham*, 490 U.S. at 396) (quotations marks omitted).  These factors are not exclusive.  *Id.* (citing *Bryan*, 630 F.3d at 826).  The court "examine[s] the totality of the circumstances and consider[s] 'whatever specific factors may be appropriate in a particular case[.]'" *Id.* (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

"Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." *Id.* (citing *Bryan*, 630 F.3d at 831; *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001)).  However, officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct [the court] identif[ies] as reasonable." *Id.* at 876 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).  "The 'most important' factor is whether the individual posed an 'immediate threat to the safety of the officers or others.'" *Id.* at 872 (quoting *Bryan*, 630 F.3d at 826).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  Courts must allow "for the fact that police officers are often forced to make split-

second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the

amount of force that is necessary in a particular situation." *Id.* at 397. "Not every push or shove,

even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

Amendment." *Id.* at 396 (citation and quotations marks omitted).

"Because the excessive force inquiry nearly always requires a jury to sift through

disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on

many occasions that summary judgment or judgment as a matter of law in excessive force cases

should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012)

(internal quotations and citations omitted); *see also Santos*, 287 F.3d at 853 ("police misconduct

cases almost always turn on a jury's credibility determinations"). "But, even though

reasonableness traditionally is a question of fact for the jury . . . defendants can still win on

summary judgment if the district court concludes, after resolving all factual disputes in favor of

the plaintiff, that the officer's use of force was objectively reasonable under the

circumstances." *Scott*, 39 F.3d at 915 (citations omitted).

**B.    Analysis**

Here, the severity of the intrusion, i.e., the type and amount of force used, during both

takedowns was minimal. In the first takedown, plaintiff claims that defendant grabbed her while

she stood atop two steps at the doorway entrance, took her "down to the ground hard and fast,"

and put a knee in her back. Sandoval Dep. 164:14-15, ECF #31-1; DVD 1:53-58, ECF #37.

Plaintiff does not contend that defendant used additional force, such as kicks or punches.

Sandoval Dep. 164:6-9, ECF #31-1. Defendant asserts that he took plaintiff to the ground and

maintained physical contact over her long enough to gain control and secure her in handcuffs.

Melvin Decl. ¶ 7, ECF #30.  Plaintiff, in fact, admits she was "resisting a little bit."  Sandoval

Dep. 163:19-20.

During the second takedown, plaintiff was handcuffed and once again standing when

defendant initiated the maneuver.  DVD 5:56-59, ECF #37.  This time, plaintiff stood on level

ground with defendant and had just kicked him.  *Id.*  Defendant grabbed plaintiff and took her to

the ground with less force than the first takedown; however, plaintiff was incapable of breaking

her fall due to the handcuffs.  Once plaintiff was to the ground, defendant refrained from the use

of his knee or bodyweight to further secure plaintiff as he had done before.  *Id.*  Again, plaintiff

admits, "I guess you could say I was resisting."  Sandoval Dep. 165:7-8.

Plaintiff claims that the amount of force used was excessive because defendant broke her

back, which defendant disputes.  Def. Reply 3, ECF #35.  When analyzing the quantum of force

used, a court may consider "the severity of injuries[.]"  *Felarca v. Birgeneau*, 891 F.3d 809, 817

(9th Cir. 2018) (citing *Santos*, 287 F.3d at 855).

Defendant points to plaintiff's physical examination on June 14, 2018, approximately two

months after the incident, during which plaintiff received an x-ray for her "lumbar spine" that

showed there were "[n]o fractures."  *Id.* (citing ECF #26, at 84).  Plaintiff relies on another x-ray

from a year later, on July 7, 2019, which revealed an "old small anterior and superior corner

fracture of L3."  ECF #27, at 4.  Plaintiff claims this injury was caused by defendant's use of

excessive force.  ECF #37, at 1.  However, plaintiff offers no medical evidence as to how "old"

the fracture depicted in the July 7, 2019 x-ray was and whether its age correlates with the date of

the incident at issue or instead could have been caused by a different event, or whether the

fracture was of the nature and type that could be caused by defendant's actions.[3]  *See Manriquez v. Town of Superior*, No. CV-18-02026-PHX-DWL, 2020 WL 5544407, at *16 (D. Ariz. Sept. 16, 2020) (finding that where the plaintiff had no "medical witnesses who might tie the shoulder damage reflected in the MRI to Manriquez's encounter with Defendants, it would be 'mere speculation' for a juror to conclude this damage was caused by the encounter"); *Paramo v. City of Morgan Hill*, No. C01-0825MMC(PR), 2002 WL 1497521, at *4 (N.D. Cal. July 9, 2002) (finding the plaintiff's allegation that the defendants caused his alleged injuries, without "any medical evidence that any such injury was the result of defendants' actions" was "conclusory in nature and insufficient to create a genuine issue of fact"); *Clark v. McGuire*, No. 2:12-CV-2159 LKK KJN, 2014 WL 3058454, at *12 (E.D. Cal. July 3, 2014), *report and recommendation adopted,* 2014 WL 4276086 (E.D. Cal. Aug. 29, 2014), *rev'd and remanded on other grounds,* 693 F. App'x 649 (9th Cir. 2017) ("'[G]enerally plaintiff must prove causation by expert medical testimony except where there is an obvious causal relationship-one where injuries are immediate and direct.'") (citation omitted).

Moreover, although plaintiff claims that she can be heard in the video saying, "You just cracked my back!," this claims is "blatantly contradicted" by the video, which reveals plaintiff said you "just fucking cracked my fucking knee."  DVD 6:17-21, ECF #37; *Scott*, 550 U.S. at

---

[3] Even if plaintiff's L3 had been fractured during this incident, it would still be but one factor in the totality of the circumstances that the court considers in the excessive force analysis.  *See Luchtel v. Hagemann*, 623 F.3d 975, 982 (9th Cir. 2010) (holding that officers' takedown and restraint of the plaintiff did not constitute excessive force because "[a]lthough Luchtel's physical injuries and any limitations from them are distressing, it's not correct to put the blame at the officers' door absent evidence that excessive force was used"); *Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir. 2001) (holding the use of force was not excessive where the plaintiff was sprayed with a chemical irritant, pushed to the ground and handcuffed, and suffered a broken finger that resulted in permanent damage).

380.  During the entire videotaped incident, plaintiff made no complaints about her back being injured or back pain.

Turning to the government's interest in the use of force, the severity of the crime was minor.  Defendant had probable cause to arrest plaintiff for theft in the third degree, a misdemeanor.  Hisel Decl., Ex. 2, at 15-16, ECF #31-1.  However, regarding the second and most important *Graham* factor, whether plaintiff posed an immediate threat to the officer or others, defendant asserts he took plaintiff down the first time because he feared that "[t]he boldness of the theft and the brief conversation [he] had with [plaintiff] also indicated that she was emotional and not acting rationally, giving [him] fear that she may attempt to access weapons, call for assistance from others, barricade herself inside, or attempt to flee."  Melvin Decl. ¶ 7, ECF #30.  Plaintiff admits she "was intoxicated and not [herself]" during the encounter.  ECF #37, at 1.  Additionally, from previous contacts defendant had experienced at the residence, he believed it was likely that there would be another adult resident on the premises who was "almost always found to be intoxicated."  Melvin Decl. ¶ 7, ECF #30.  In light of these factors, defendant had reason to fear that the situation would dangerously escalate unless plaintiff was prevented from entering her home.  *Id*.  In fact, defendant's concern about weapons was confirmed when he found a knife in plaintiff's purse, DVD 13:40-42, ECF #37, and defendant's belief that someone else, i.e., plaintiff's boyfriend, was inside the residence was also confirmed.  *Id.* at 3:58-4:00.

As for the second takedown, the immediate threat was much more clear:  plaintiff had just violently kicked at defendant and again attempted to enter her home.  DVD 5:53-58, ECF #37.  Plaintiff's use of physical force presented an immediate threat to defendant, making it necessary for him to regain control of the situation.  Melvin Dec. ¶ 9, ECF #30.

15 – OPINION AND ORDER

With respect to the third factor, whether plaintiff was resisting or evading arrest, plaintiff concedes that at the time of the first takedown, she "was resisting a little bit" and "knew [she] was under arrest and [she] was going to jail no matter what." Sandoval Dep. 163:19-22, ECF #31-1. The video evidence confirms that plaintiff pulled away from defendant, and it was at that point defendant took her to the ground to keep her from entering the home. DVD 1:55-2:00, ECF #27. As for the second takedown, defendant initiated the maneuver after plaintiff attempted to assault him and attempted to reenter her home. *Id.* 5:52-6:00.

In sum, while the severity of the crime was minimal, plaintiff posed potential danger to defendant, and plaintiff knowingly attempted to resist and evade prior to each of the takedown maneuvers. Accordingly, defendant had a substantial interest in the use of force when he administered both takedowns.

With respect to whether there were feasible less-intrusive alternatives to both takedowns, that factor is speculative at best. *Glenn*, 673 F.3d at 872. Concerning the first takedown, defendant had to act quickly after both his commands to stop and his attempt to grab plaintiff's jacket failed. *See Graham*, 490 U.S. at 397 (holding that courts must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). The second takedown similarly required a quick response to regain control of the situation as plaintiff had just attempted to assault defendant and again attempted to evade.

Furthermore, while defendant gave plaintiff no warning before either takedown, these are not the circumstances in which the Ninth Circuit has held that a warning is required. *See Deorle*, 272 F.3d at 1279, 1283-84 (finding officer was objectively unreasonable in failing to give warning before shooting plaintiff with a "long-range impact weapon," knocking him off his feet

and removing one of his eyes, when plaintiff was merely walking in the direction of an officer at a steady gait with a can or bottle); *Hayes v. County of San Diego*, 736 F.3d 1223, 1234-35 (9th Cir. 2013) (finding excessive force where officers failed to give a warning before shooting a knife-wielding suspect, who stood six to eight feet away); *see also Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("whenever practicable, a warning must be given before deadly force is employed").

Finally, the court balances "the gravity of the intrusion on the individual against the government's need for the intrusion." *Glenn*, 673 F.3d at 874. Here, the record contains a video recording that leaves no dispute as to the amount of force used or the circumstances under which the force was used. Second, defendant reasonably feared prior to the first takedown that plaintiff's attempt to enter her residence presented an immediate safety risk. Likewise, plaintiff posed an immediate threat prior to the second takedown when she attempted to assault defendant. Third, plaintiff actively resisted and attempted to evade prior to each of the takedown maneuvers. Based on the totality of the circumstances, the force used by defendant in both takedown maneuvers did not amount to excessive force. *See Fidge v. Lake County Sheriff's Dept.*, No. 13–cv–05182–YGR, 2015 WL 3919819, at *9 (N.D. Cal. June 25, 2015) ("Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force.").

## IV.    Qualified Immunity

Defendant also asserts plaintiff's claim fails because he is entitled to qualified immunity. However, the court need not reach that issue because defendant's use of force was not excessive as a matter of law. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that "the initial inquiry" in the qualified immunity analysis is whether "the facts alleged show the officer's conduct violated a constitutional right").

17 – OPINION AND ORDER

**ORDER**

Defendant's motion for summary judgment (ECF #29) is GRANTED.  Judgment shall be

entered on behalf of defendant, and this case is DISMISSED.

IT IS SO ORDERED.

DATED  March 10, 2021.


_____
    /s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge